# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**CRYSTAL ANNE BURRUS**                                                      **PLAINTIFF**

**VS.**                             **CASE NO. 4:20CV01366 PSH**

**KILOLO KIJAKAZI,[1] Acting Commissioner,**
    **Social Security Administration**                               **DEFENDANT**

## ORDER

Plaintiff Crystal Anne Burrus ("Burrus"), in her appeal of the final decision of

the Commissioner of the Social Security Administration (defendant "Kijakazi") to

deny her claim for Supplemental Security Income benefits (SSI), contends the

Administrative Law Judge's (ALJ) decision that she is not disabled is not supported

by substantial evidence.  Specifically, Burrus contends the ALJ erred in two ways: (1)

in failing to explain his analysis of the supportability and consistency of the medical

opinion of Dr. Christopher Wright ("Wright"); and (2) in selectively reading the

medical evidence of record in assessing her residual functional capacity ("RFC").  The

---

[1]

Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021, and
is the proper defendant.  Fed. R. Civ. P. 25(d).

parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on February 13, 2020.  The relevant period to be examined is from October 31, 2018, when Burrus filed her application, through March 5, 2020, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questioning from her attorney, Burrus stated she was 47 years old with a ninth grade education with some special education classes.  She had no past relevant work experience.  Burrus lived with her daughter and her children.

Burrus described a long history of migraine headaches, with severe episodes lasting 2-3 days.  At the time of the hearing, Burrus stated she had migraines weekly, with increasing intensity, and had 2-3 really bad headaches in a month.  An average migraine headache, according to Burrus, lasted 1 ½ days.  Treatment for the headaches included Aimovig (a monthly shot), Zonisamide, Gabapentin, and Imitrex.  Burrus identified drowsiness and upset stomach as side effects from these medications.  Dr. Wright, a neurologist at Little Rock Diagnostic Clinic, treated her migraines.

Burrus reported tachycardia in 2017.  As a result, she carries nitroglycerin pills, having last taken one a month before the hearing.  Burrus was diagnosed with chronic obstructive pulmonary disease ("COPD") in 2017 or 2018, which required several trips to the hospital with flare ups.  She testified she was taking daily medication and

using multiple inhalers to combat the COPD.  Burrus ascribed dizziness in 2019 to complications from COPD.

Burrus stated she underwent ear surgery for tumors in April and August 2018, and her hearing and balance continued to be affected.  According to Burrus, she fell the night before the hearing.

Burrus also claimed to suffer from carpal tunnel syndrome.  She testified that she underwent successful surgery on her right wrist in 2017.  Nevertheless, Burrus stated she still had difficulties with writing.

Burrus also described foot problems originating in January of 2020, and indicated she was currently doing physical therapy, with a plan to later undergo surgery to repair a tendon and remove bone spurs.  In addition, Burrus said she had neuropathy in her feet, the cause of which was unknown.  Burrus opined that the neuropathy may be related to a narrowing along the base of her spine, causing nerve issues.  Burrus also stated she would be going to physical therapy for back and hip pain.

When asked about daily activities, Burrus stated she did not drive, had never possessed a license, and that she had anxiety when she had tried to drive. Burrus stated she cooked "every now and then," albeit slowly, and she did not do dishes. According to Burrus, she sleeps poorly, and naps at least twice a day.  (Tr. 39).  Burrus estimated

she could sit for 20-30 minutes, stand for 5-10 minutes, walk short distances, and lift

a tea or milk jug.  Her youngest granddaughter, age 4, reads to Burrus on occasion.

Burrus watches television but avoids reading because it causes migraines.  In addition,

she avoids the school activities of her grandchildren because of COPD and because

the lights tend to cause migraines.  (Tr. 33-46).

Dianne Smith ("Smith"), a vocational expert, testified.  The ALJ posed a

hypothetical question to Smith, asking her to assume a worker of Burrus' age,

education, and experience, who could perform light work with the following

restrictions: can only occasionally stoop, kneel, crouch, crawl, or balance; can

frequently but not constantly finger or feel with the bilateral upper extremity; should

not be in a job requiring excellent hearing, so that there should not be noise above the

moderate level as defined in the *Dictionary of Occupational Titles* ("DOT"); and she

should avoid concentrated exposure to temperature extremes, dust, fumes, humidity,

chemicals, or other pulmonary irritants.  Smith testified that such a worker could

perform unskilled, light jobs such as  record changers or electrical accessory

assemblers.  According to Smith, there were also available jobs if the hypothetical

question were altered to a sedentary level rather than light, citing the jobs of table

worker, cutter or paster, and stuffer.  Smith stated that there would not be jobs

available if the hypothetical worker were off task 20% of the day, if the worker

needed unscheduled breaks, or was absent 3 or more days per month.  (Tr. 48-50).

*ALJ's Decision:*

In his March 5, 2020, decision, the ALJ determined that Burrus had the following severe impairments: disorder of the ear, with hearing loss; migraines; COPD; peripheral neuropathy; hypertension; congestive heart failure; degenerative disc disease; and carpal tunnel syndrome.  The ALJ's assessment of Burrus' RFC mirrored the abilities set forth in the first hypothetical question posed to Smith – that she could do light work with numerous restrictions.  Burrus claims the ALJ's RFC finding was erroneous.

*Analysis:*

*Claim One – ALJ Error in Assessing Dr. Wright's Opinions*

Burrus first contends that the ALJ failed to comply with the relevant regulations for evaluating medical opinion evidence when considering the opinions of treating neurologist Wright contained in a December 31, 2018, document.[2]  The ALJ summarized and assessed Wright's opinions:

> Christopher Wright, M.D., indicated that the claimant has more than 1 headache per week lasting longer than 4 hours each. He further indicated that the claimant's migraines would interfere with the ability to work, and that she would miss about one day of work per week.  The undersigned finds this opinion to be unpersuasive.  The opinion is

---

[2]  The form executed by Wright was a one-page checklist.  (Tr. 776).

somewhat supported by Dr. Wright's treatment of the claimant at the time the opinion was rendered.  However, the opinion is inconsistent with the record as a whole, which reflects that the claimant's condition was vastly improving with Aimovig after Dr. Wright rendered his opinion.

(Tr. 20).

The regulations governing the consideration of the medical opinions were revised for claims filed on or after March 27, 2017.  Burrus filed her claim on February 1, 2018.  The new regulations eliminated the "long-standing 'treating physician' rule." *See Fatuma A. v. Saul*, 2021 WL 616522, 5 (D. Minn. 2021), report and recommendation adopted, 2021 WL 615414 (D. Minn. 2021).  The regulations now provide the following:

> ... Under the new regulatory scheme, the Commissioner "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).
>
>    The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical

Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017). ...

*See Phillips v. Saul*, 2020 WL 3451519, 2 (E.D. Ark. 2020) (Deere, MJ).

The new regulations require the ALJ to discuss, at a minimum, the supportability and consistency of a medical opinion. Here, while more detail would have been welcomed, the ALJ satisfied the minimum requirements of the new regulations because he addressed the supportability and consistency of Wright's opinion.

Though the ALJ's discussion was brief, he explained *why* he found Wright's opinions unpersuasive. The timing of Wright's opinions was key to the ALJ's findings. The onset of the relevant period was October 31, 2018. On November 27, 2018, Wright saw Burrus, who reported having had a migraine headache for four consecutive days. Wright prescribed Aimovig. Wright's opinions on Burrus' ability to work were provided on December 31, 2018. Wright did not see Burrus again until March 2019, when he noted improvement on Aimovig. Burrus reported her headaches were now resolved within an hour by Tylenol and Ibuprofen, and that she slept off a headache only three times since November of the previous year. The outlook was even better when Wright saw Burrus six months later, in September 2019. Burrus reported at that time that her headaches were a "lot better," occurred twice a week, and resolved with Ibuprofen. (Tr. 882). Wright observed, "Aimovig has been

doing a great job with her migraines." *Id.*

When the ALJ evaluated Wright's December 31, 2018 opinions, he stressed the timing problems with both the supportability and consistency of the opinions. Specifically, the ALJ found the opinion was "somewhat supported" by Wright's treatment of Burrus *"at the time the opinion was rendered."* (Tr. 20, emphasis added). Similarly, the ALJ noted Wright's opinion was inconsistent with the record as a whole, which showed Burrus was vastly improving *"after Dr. Wright rendered his opinion." Id.* While these comments by the ALJ are not exhaustive, they explain why and how he reached his decision, focusing on supportability and consistency, and satisfy the criteria of the new regulations. Burrus' first claim for relief is without merit.[3]

*Claim Two – ALJ Error in Determining RFC*

Burrus next argues the ALJ's RFC assessment was not supported by substantial evidence because it was based upon a selective reading of the medical evidence of record. Specifically, Burrus contends the ALJ failed to consider the frequency of treatment as well as the effect of her "waxing and waning multiple medical

---

[3]

Burrus sums up Kijakazi's position as "simply stating that he [the ALJ] 'considered both supportability and consistency when evaluating Dr. Wright's opinion,' and the Court should 'believe' the ALJ." Docket entry no. 13, page 1. This contention is at odds with the ALJ's decision, as he did not simply pay lip service to the terms "supportability" and "consistency."

conditions" on her ability to maintain a regular work schedule. Docket entry no. 11, pages 23, 24, & 26, and docket entry no. 13, pages 5-6.

It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his [or her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8ᵗʰ Cir. 2001). There is no debating that Burrus frequently sought treatment for a variety of impairments during the relevant period. The frequency of treatment, however, does not answer the primary question of whether the impairments are disabling. The ALJ thoroughly discussed the medical treatment given to Burrus during the relevant period. His observations include the marked improvement of her migraines with Aimovig, no problems with breathing in January 2019, COPD exacerbation in June, no acute COPD exacerbations in September, and improving pain in her ears in October. The ALJ also cited stable hypertension in January and sinus congestion in July. (Tr. 19-20). The ALJ adequately examined the medical records in assessing whether Burrus proved her impairments were disabling. The ALJ's task is to sort through the medical records and other relevant evidence. He is not required to adopt the view of any particular medical provider, nor is he is not bound to find disability based upon frequency of treatment. In this instance, the RFC acknowledged Burrus' impairments by restricting

her to less than the full range of light work.  This included allowances for her hearing

loss and COPD.  The ALJ did not err by selectively reading the medical evidence of

record.  Instead, substantial evidence supports the ALJ's weighing of the evidence and

the resulting RFC decision.

The Court's task is not to review the record and arrive at an independent

decision, nor is it to reverse if some evidence supports a different conclusion.  The test

is whether substantial evidence supports the ALJ's decision.  *See, e.g., Byes v. Astrue*,

687 F.3d 913, 915 (8th Cir. 2012).  This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Kijakazi is affirmed

and Burrus' complaint is dismissed with prejudice.

IT IS SO ORDERED this 30th day of July, 2021.

_____
UNITED STATES MAGISTRATE JUDGE